United States District Court
Southern District of Texas
**ENTERED**
August 23, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HENRY & LYDIA ANSAH, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-23-2488 |
| | § | |
| NATIONWIDE PROPERTY AND | § | |
| CASUALTY INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Henry and Lydia Ansah (collectively, "Plaintiffs") allege that Nationwide Property and Casualty Insurance Company ("Defendant") underpaid their property insurance claim.[1]  Pending before the court is Nationwide Property and Casualty Insurance Company's Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 19).  Defendant argues that Plaintiffs are not entitled to further personal property coverage because they failed to make the damaged property available for inspection or to document the damages.[2]  Defendant argues that Plaintiff's various extra-contractual claims fail for lack of evidence, inadequate pleading, and the lack of an injury other than nonpayment of insurance

---

[1]Plaintiff's Original Petition Expedited Action Under TRCP 169 ("Petition"), Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 6 ¶ 10, p. 16 ¶ 51.  All page numbers refer to the pagination imprinted at the top of the page by the court's Electronic Case Filing system.

[2]Defendant's MSJ, Docket Entry No. 19, p. 12 ¶ i.

benefits.³  For the reasons stated below, Defendant's MSJ will be granted, and this action will be dismissed with prejudice.

## I. Background

Plaintiffs purchased a property insurance policy from Defendant.⁴  Among other things, the Policy covered Plaintiffs' dwelling and their personal property in the dwelling.⁵  The Policy imposed duties on Plaintiffs after a covered loss:

1. **Your Duties After Loss**

    In case of a loss to covered property, we have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to us. . . .

    . . .

    **d.**  Protect the property from further damage. . . .

    **e.**  Cooperate with us in the investigation of a claim;

    **f.**  Prepare an inventory of damaged personal property showing the quantity, description, "actual cash value" and amount of loss.  Attach all bills, receipts and related documents that justify the figures in the inventory;

    **g.**  As often as we reasonably require:

---

³Id. at 16-21.

⁴Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, p. 6 ¶ 10; Homeowner Policy Declarations, Policy Number 78 42 HR 032131 ("the Policy"), Exhibit A-1 to Defendant's MJ, Docket Entry No. 20, p. 4.

⁵Policy, Exhibit A-1 to Defendant's MSJ, Docket Entry No. 20, p. 15 ¶ A.1.a., p. 16 ¶ C.1.  The parties use the terms "personal property" and "contents" interchangeably.  For simplicity the court refers only to personal property.

    **(1)**    Show the damaged property;

    **(2)**    Provide us with records and documents we request and permit us to make copies . . .[6]

The Policy has an appraisal provision to resolve loss valuation disputes.[7] In the event of a dispute, each party hires an appraiser, the appraisers agree on an umpire, and the appraisers determine a binding loss amount by agreement or by submitting differences to the umpire.[8]

On February 18, 2021, Defendant received from Plaintiffs a claim for damages to their dwelling and personal property caused by a freeze event that occurred the day before.[9] On March 5, 2021, Defendant contacted Plaintiffs to discuss their claim and the claims process.[10] Defendant began investigating Plaintiffs' claim and paid $87,122.07 for dwelling damage and at least $35,984.83 for personal property damage.[11] Plaintiffs disputed Defendant's

---

[6] Id. at 53.

[7] Id. at 55 ¶ F.

[8] Id.

[9] Declaration of Adam Dohm in Support of Defendant Nationwide Property and Casualty Insurance Company's Motion for Summary Judgment ("Dohm Decl."), Exhibit A to Defendant's MSJ, Docket Entry No. 19-2, p. 2 ¶ 3; Nationwide's Activity Log for Claim No. 584579-GL ("Claim Activity Log"), Exhibit A-2 to Defendant's MSJ, Docket Entry No. 19-2, p. 68; Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiffs' Response"), Docket Entry No. 21, p. 5 ¶ 1.

[10] Dohm Decl., Exhibit A to Defendant's MSJ, Docket Entry No. 19-2, p. 2 ¶¶ 3-4; Claim Activity Log, Exhibit A-2 to Defendant's MSJ, Docket Entry No. 19-2, p. 66.

[11] Dohm Decl., Exhibit A to Defendant's MSJ, Docket Entry No. 19-2, p. 2 ¶ 5; Claim Payment Summary by Coverage Category

(continued...)

valuation of their loss and invoked the Policy's appraisal provision.[12] The appraisers determined that the actual cash value of the dwelling damage was $78,936.05 — less than what Defendant had paid.[13]

Appraisal of the damaged personal property was not completed. On April 13, 2023, Defendant sent a letter to Plaintiffs' counsel, stating:

> Our appraiser (Tod Falcomata) has been attempting to work with your appraiser to get a full detailed list of the personal property and to review the claimed damage. [U]nfortunately, he has not been able to receive the property documents nor view the claimed damaged items. This is delaying the appraisal process of the personal property. We are again requesting you provide our

---

[11](...continued) ("Categorized Payment Summary"), Exhibit A-4 to Defendant's MSJ, Docket Entry No. 19-2, pp. 72-73 (summing payments through 07/29/2022); Claim Payment Summary, Exhibit A-3 to Defendant's MSJ, Docket Entry No. 19-2, p. 71 (listing payments after 07/29/22). There is some dispute about whether the amount paid for personal property was $35,984.83 or $40,812.15. See Plaintiffs' Response, Docket Entry No. 21, p. 8 ¶ 10. This discrepancy appears to be rooted in the fact that the Categorized Payment Summary excludes payments made after July 29, 2022. See Defendant Nationwide Property and Casualty Insurance Company's Reply in Support of Its Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 22, p. 4 ¶ 9; Categorized Payment Summary, Exhibit A-4 to Defendant's MSJ, Docket Entry No. 19-2, p. 72. The discrepancy does not affect the outcome of Defendant's MSJ, which rests on Plaintiffs' failure to adequately document or make available the damaged personal property.

[12]Dohm Decl., Exhibit A to Defendant's MSJ, Docket Entry No. 19-2, p. 2 ¶ 6; Demand Letter and Invocation of Appraisal, Exhibit A-5 to Defendant's MSJ, Docket Entry No. 19-2, p. 77.

[13]Dohm Decl., Exhibit A to Defendant's MSJ, Docket Entry No. 19-2, p. 2 ¶ 6; compare Appraisal Award Form, Exhibit A-6 to Defendant's MSJ, Docket Entry No. 19-2, p. 79 with Categorized Payment Summary, Exhibit A-4 to Defendant's MSJ, Docket Entry No. 19-2, p. 73.

appraiser with all the documents regarding the personal property in order to address the remaining items.[14]

Defendant's letter cited to Plaintiffs' duties under the Policy after a loss, including the duty to show the damaged property.[15] According to a March 21, 2023, email from Defendant's appraiser to Defendant, Plaintiffs' appraiser "confirmed all the [personal property] being claimed have been disposed of, so they are not available for inspection, and they don't have any photos/documentation of the items they supposedly disposed of."[16] On April 11, 2023, Plaintiffs' counsel sent an email, stating in part: "We further argue that your request for receipts for the recovery of the depreciation portion of my client's contents claim is unwarranted.  You have failed to provide any basis for this request, and it is not a requirement under the policy or the law."[17]

On June 12, 2023, Plaintiffs brought this action alleging breach of contract, "Breach of the Duty of Good Faith and Fair Dealing[,]" violations of Texas Deceptive Trade Practices Act ("DTPA") § 17.46(b), violations of the Texas Prompt Payment of

---

[14] Dohm Decl., Exhibit A to Defendant's MSJ, Docket Entry No. 19-2, p. 2 ¶ 6; April 13, 2023, Letter, Exhibit A-7 to Defendant's MSJ, Docket Entry No. 19-2, p. 80.

[15] April 13, 2023, Letter, Exhibit A-7 to Defendant's MSJ, Docket Entry No. 19-2, pp. 80-81.

[16] March 21, 2023, Email, Exhibit A-9 to Defendant's MSJ, Docket Entry No. 19-2, p. 88; Dohm Decl., Exhibit A to Defendant's MSJ, Docket Entry No. 19-2, p. 3 ¶ 7.

[17] April 11, 2023, Email, Exhibit A-10 to Defendant's MSJ, Docket Entry No. 19-2, p. 90; Dohm Decl., Exhibit A to Defendant's MSJ, Docket Entry No. 19-2, p. 3 ¶ 7.

Claims Act ("TPPCA"), violations of Chapter 541 of the Texas Insurance Code, common law fraud, and "Ongoing Conspiracy to Commit Illegal Acts[.]"[18] Plaintiff alleges that Defendant breached the Policy by underpaying the claim.[19] Plaintiffs allege that Defendant breached the duty of good faith and fair dealing by not adequately and reasonably investigating Plaintiffs' claim.[20] Plaintiffs allege that Defendant violated DTPA § 17.46(b) by false advertising, a bait and switch tactic, misrepresenting the authority of its agents, and an unconscionable course of conduct.[21] Plaintiffs allege that Defendant violated the TPPCA by failing to meet various claim processing deadlines.[22] Plaintiffs recite a laundry list of sections of Texas Insurance Code Chapter 541 that Defendant allegedly violated, but they do not allege supporting facts.[23] Plaintiffs allege that Defendant committed common law fraud by making false statements "for the purpose of misleading Plaintiff as to the actual damages resulting from the peril" and "for the purpose of misleading Plaintiff as to the rights, duties, and insurance benefits" in the Policy.[24] Plaintiffs' "Ongoing

---

[18]Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, pp. 16-36.

[19]Id. at 16 ¶ 51.

[20]Id. at 19 ¶ 62.

[21]Id. at 19-20 ¶¶ 63-66.

[22]Id. at 21-24.

[23]Id. at 24-28.

[24]Id. at 35-36 ¶ 79-80.

Conspiracy" claim alleges that Defendant conspired with one or more other persons to misrepresent the damage caused by the peril and to misrepresent the rights, duties, and insurance benefits in the Policy.[25]

Defendant's MSJ was filed on July 17, 2024.[26] Defendant argues that Plaintiffs' breach-of-contract claim fails because Defendant paid more than the appraisal award for dwelling damage and because Plaintiffs violated the Policy by not cooperating in the investigation and not showing the damaged personal property, thereby preventing appraisal.[27] In support of its claim that Plaintiffs disposed of the personal property, Defendant cites Plaintiff's Response to Defendant's Discovery Requests in which Plaintiffs admitted that the damaged personal property items are unavailable for inspection and that Plaintiffs had no photographs or other documentation showing the claimed personal property damage.[28] Defendant argues that Plaintiffs' extra-contractual claims fail due to lack of evidence, inadequate pleading, and the absence of an injury independent of the alleged underpayment of

---

[25] Id. at 36 ¶¶ 82-83.

[26] Defendant's MSJ, Docket Entry No. 19.

[27] Id. at 12 ¶ i, p. 15 ¶ ii.

[28] Plaintiff's Response to Defendant's Discovery Requests, Exhibit C to Defendant's MSJ, Docket Entry No. 19-2, pp. 100-01 (Henry Ansah); Plaintiff's Response to Defendant's Discovery Requests, Exhibit D to Defendant's MSJ, Docket Entry No. 19-2, pp. 107-08.

policy benefits.[29] Plaintiffs responded on August 7, 2024.[30] Plaintiffs acknowledge that they are not seeking further payment for dwelling damage.[31] But Plaintiffs argue that they made the damaged personal property available for inspection and attach a "Client Content List," which lists items that Plaintiffs allege were damaged along with replacement and cash values.[32] Plaintiffs argue that their extra-contractual claims survive regardless of the validity of their contract claim and that there is evidence to support each claim.[33]

## II. Legal Standards

### A. Texas Contract Law

Texas courts "interpret insurance policies . . . according to the rules of contract construction." American Manufacturers Mutual Insurance Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003). "The goal of contract construction is to ascertain the parties' intent as expressed in the language of the agreement." Rosetta Resources Operating, LP v. Martin, 645 S.W.3d 212, 218 (Tex. 2022). "If the language lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of

---

[29] Defendant's MSJ, Docket Entry No. 19, pp. 16-21.

[30] Plaintiffs' Response, Docket Entry No. 21.

[31] Id. at 5 ¶ 2, pp. 7-8 ¶ 9.

[32] See generally Client Content List, Exhibit A to Plaintiffs' Response, Docket Entry No. 21-2, pp. 2-32.

[33] Plaintiffs' Response, Docket Entry No. 21, pp. 10-17.

law." Great American Insurance Co. v. Primo, 512 S.W.3d 890, 893 (Tex. 2017).

B.  **Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact is or is not genuinely disputed must support the assertion by "citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[.]" Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 2554. "The burden shifts to the non-moving party to show, with competent evidence, the existence of a genuine dispute of material fact." Miller v. Michaels Stores, Inc., 98 F.4th 211, 216 (5th Cir. 2024). "The court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party." Id.

### III.  Analysis

A.  **Plaintiffs' Breach-of-Contract Claim**

Under the Policy, Defendant has no duty to provide coverage if Plaintiffs fail to cooperate in the Defendant's claim investigation

or fail to show Defendant the damaged property and if Plaintiffs' failure prejudices Defendant.[34] Plaintiffs' appraiser told Defendant's appraiser that the damaged personal property was disposed of before the appraisal process was conducted.[35] Plaintiffs' discovery responses confirm that the property is not available and that there are no photographs or other documentation that would allow for appraisal.[36] Plaintiffs state without evidence that they made the damaged personal property available for inspection. The only exhibit attached to Plaintiffs' Response is a list of items that Plaintiffs claim were damaged.[37] The list does not satisfy Plaintiffs' duty under paragraph C.1.e of the Policy to cooperate with Defendant's investigation, the duty under paragraph C.1.f to submit an inventory supported by bills and receipts, or the duty under paragraph C.1.g(1) to show Defendant the damaged property, and it does not provide evidence that would allow an appraiser to verify the items or the extent of damage.

---

[34] Policy, Exhibit A-1 to Defendant's MSJ, Docket Entry No. 20, p. 53 ¶¶ C.1.e-C.1.g(1).

[35] March 21, 2023, Email, Exhibit A-9 to Defendant's MSJ, Docket Entry No. 19-2, p. 88.

[36] Plaintiff's Response to Defendant's Discovery Requests, Exhibit C to Defendant's MSJ, Docket Entry No. 19-2, pp. 100-01 (Henry Ansah); Plaintiff's Response to Defendant's Discovery Requests, Exhibit D to Defendant's MSJ, Docket Entry No. 19-2, pp. 107-08.

[37] Client Content List, Exhibit A to Plaintiffs' Response, Docket Entry No. 21-2.

Plaintiffs argue that Defendant failed "to conduct a proper and timely inspection[.]"[38] But Plaintiffs cite no evidence of when the items were disposed of or when Defendant first requested to inspect the items. Plaintiffs also offer no explanation why they did not photograph the damages before disposal. The court concludes that Plaintiffs failed to comply with the Policy. Plaintiffs' failure prejudiced Defendant by hindering its ability to verify Plaintiffs' personal property valuation through appraisal. Defendant has no duty under the Policy to make further payment for the damaged personal property. Defendant's MSJ will therefore be granted as to Plaintiffs' breach-of-contract claim.

### B. Plaintiffs' Good Faith and Fair Dealing Claim

"An insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims." Republic Insurance Co. v. Stoker, 903 S.W.2d 338, 340 (Tex. 1995). "[A]n insurer breaches this common law duty if it denies or unreasonably delays payment of a claim when it 'knew or should have known that it was reasonably clear that the claim was covered[.]'" Ortiz v. State Farm Lloyds, 589 S.W.3d 127, 133 (Tex. 2019) (quoting Stoker, 903 S.W.2d at 340). Although bad-faith claims generally cannot survive absent a valid claim under the policy, there is a narrow exception: "if an insurer's [bad faith] violation causes an injury independent of the loss of policy benefits, the insured may recover

---

[38]Plaintiffs' Response, Docket Entry No. 21, p. 8 ¶ 12.

damages for that injury even if the policy does not grant the insured a right to benefits." USAA Texas Lloyds Co. v. Menchaca, 545 S.W.3d 479, 489 (Tex. 2018). But the injury must be "truly independent of the insured's right to receive policy benefits. [The independent injury exception] does not apply if the insured's statutory or extra-contractual claims are predicated on the loss being covered under the insurance policy . . . or if the damages flow or stem from the denial of the claim for policy benefits[.]" Id. at 500 (internal citations, brackets, and quotation marks omitted). Because Defendant satisfied its obligations under the Policy and because Plaintiffs have cited no evidence of an independent injury, Defendant's MSJ will be granted as to Plaintiffs' bad faith claim.

C.  **Plaintiffs' DTPA Claim**

Plaintiffs allege that Defendant violated DTPA § 17.46(b) by false advertising, a bait and switch tactic, misrepresenting the authority of its agents, and unconscionable conduct. Plaintiffs have cited no evidence that Defendant engaged in any of these prohibited practices. Defendant's MSJ will therefore be granted as to Plaintiffs' DTPA claims.

D.  **Plaintiffs' TPPCA Claim**

The TPPCA provides for award of 18% annual pre-judgment interest plus attorney's fees against an insurer that is liable under a plaintiff's insurance policy and that failed to meet one of

the TPPCA's claim processing deadlines. Tex. Ins. Code § 542.060(a). Plaintiffs have not shown that the Policy obligated Defendant to pay any more than it did. Moreover, Plaintiffs have cited no evidence that Defendant failed to meet any of the deadlines in the TPPCA. Defendant's MSJ will therefore be granted as to Plaintiffs' TPPCA claim.

**E.   Plaintiffs' Unfair Insurance Practice Claim**

The Petition recites numerous insurance practices prohibited by Chapter 541 of the Texas Insurance Code and alleges variously that "Defendant engaged in one or more" of the practices or that "Defendant may have engaged in one or more" of them.[39] In addition to failing to meet the federal pleading standard, these claims fail because Plaintiffs cite to no evidence that Defendant engaged in any of these prohibited practices. Defendant's MSJ will therefore be granted as to Plaintiffs' claims for violations of Chapter 541 of the Texas Insurance Code.

**F.   Plaintiffs' Fraud and Ongoing Conspiracy Claims**

"To prevail on a fraud claim, a plaintiff must show: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the

---

[39] Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1, pp. 24-27.

-13-

representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C., 546 S.W.3d 648, 653 (Tex. 2018) (internal quotation marks omitted). Plaintiffs fail to identify — by allegation and certainly by evidence — any material, false representation that Defendant made to Plaintiffs. Moreover, they fail to show how they relied on any misrepresentations by Defendants. Plaintiffs' fraud claim therefore fails. Plaintiffs likewise have cited no evidence to support their fraud conspiracy claim. Defendant's MSJ will therefore be granted as to Plaintiffs' fraud and ongoing conspiracy claims.

## IV.  Conclusion and Order

Plaintiffs cite no evidence that Defendant failed to comply with the Policy. As to dwelling damages, the parties agree that Defendant paid more than the appraisal award. As to personal property damages, the evidence — including Plaintiffs' discovery admissions — shows that Plaintiffs disposed of the property without submitting an inventory supported by bills and receipts (as required by Policy paragraph C.1.f) and without showing the property to Defendant (as required by Policy paragraph C.1.g(1)). Because this failure prejudiced Defendant's appraisal rights, Defendant has no obligation under the Policy to make further payment for the damaged personal property. Plaintiffs' remaining

claims fail for lack of evidence, lack of an independent injury, and inadequate pleading. Nationwide Property and Casualty Insurance Company's Motion for Summary Judgment (Docket Entry No. 19) is therefore **GRANTED**. This action will be dismissed with prejudice.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 23rd day of August, 2024.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE